We'll hear the next case, which is for argument, which is in Ray, the bankruptcy of Hart v. DeCity, Ehrenberg v. Tenzer. Good morning, Your Honors. My name is Bert Obregon, and I represent Trustee Howard Ehrenberg, appellant in this case. This case is an appeal of a bankruptcy appellate panel order reversing two separate judgments of a bankruptcy trial court. If it pleases the Court, I'd like to deal with these separately because they present distinctly different issues. The first order being appealed is an order denying Trustee Ehrenberg's complaint to set aside two preferential transfers. And the bankruptcy court denied that claim based on the finding that counsel for Mr. Ehrenberg failed to establish that the estate had an interest in the property transfer. We seek appellate review in an overturning of that decision based on the contention that the bankruptcy court employed the wrong standard of proof and that the bankruptcy appellate panel employed the wrong standard of appellate review in adopting that bankruptcy court decision, and in doing so, failed to articulate what the standard of review employed by the bankruptcy court was. The bankruptcy court never articulates whether it used a ponderance of evidence standard or a clear and convincing standard. The Court just simply never does state a position. The bankruptcy appellate panel affirms that decision and says, well, it looks to us like the bankruptcy court employed the correct standard, but if you go back and literally do a word search on that opinion, nowhere in the opinion does the bankruptcy appellate panel ever use the phrase clear and convincing or preponderance of evidence. Mr. Parker? If we assume that bankruptcy courts have a modicum of experience with claims of preferential and fraudulent transfers, can you then explain to me why the trustee failed to take the depositions or obtain discovery from key witnesses in the case who should have been able to answer the question clearly? Yes, I can. This is a case that involved a substitution of counsel. Mr. Tenzer's new attorney, who is here in the Court today, substituted him to this action right in the beginning. The first attorney that represented Mr. Tenzer's client didn't dispute that these transfers came from the estate. It wasn't an issue. And so all along, the parties proceeded based on the assumption that this was not being disputed. Did you ever – did substitute counsel ever explain that to the bankruptcy judge? Yes. Because the bankruptcy judge basically cited specifically the failure to obtain that discovery. We understand that. And, yes, that was discussed during pre-file conferences with the court. If the court looks at the discovery, at the interrogatories that were propounded, it's eye-opening that in the response to each interrogatory, Mr. Tenzer responds, yes, I did receive the money from debtor, and it was for services rendered. That testimony by Mr. Tenzer was intended to support a contemporaneous exchange of affirmative defense. That was his intent. But what it doesn't answer is what the source of the money was. I understand where you're going. If I may, Your Honor. Go ahead. The problem was they never pleaded that as an affirmative defense. And so there's a break here. And so all along, both sides were taking the position that, yes, this was property of the estate. It wasn't – the attorneys' counsel was dealing amicably, and that was the assumption that it was property of the estate. Nobody was questioning it. Then when counsel realized that, oh, my God, I didn't plead disaffirmative defense, we now have to shift grounds and argue that it's not property of the estate. Now, I will turn now to the Court's question. The Court's question is, well, the evidence doesn't show the source of those funds. And my response to that is, it doesn't have to, Your Honor. It doesn't have to. Let's assume for the sake of argument that the funds did come from Mr. Moulton, who put them into the corporation, and then the corporation transferred the funds. You see, the court, the trial court, is fishing for the ultimate source of those funds vis-à-vis how they came into debtors' possession and control. Our legal contention is that the controlling legal standard here is who had possession and control of these funds when they were transferred to Mr. Tenzer. The evidence does show that debtor, debtor's officers had possession and control of those funds. And I think that the fact that the court's focusing, the trial court's focus on the fact that, gee, well, we never know where these funds came from. Mr. Tenzer doesn't provide any testimony. All he says is, yes, I got them from the debtor's officers. Yes, I got them for services I rendered to debtor, but I don't know where they came from. Well, I think there's enough in the record for the court to draw an inference, indeed, for a presumption to be created under California law that those funds were in the possession and control of the debtor and, as such, they were property of the estate. So are you saying that by the time that the trustee realized that this was the tactic by the debtor, it was too late to go out and get discovery from the former chief financial officer? At that point in time, Your Honor, this case has a long history, Your Honor. If Your Honor recalls, we had a situation where the trial court dismissed these for lack of prosecution. The appellate court reversed it. It came back. We did not have a friendly judge that was willing to give us discovery extensions at that point. Yes, it was too late at that point to do for the discovery. I would also add, Your Honor, that as a practical matter, we just didn't know where these people were. We still don't know where some of these people are. For example, the CFO, we still don't know where he is. We subsequently found out that Mr. Moulton passed away, and with respect to Chase Manhattan. Well, you've got the merger problem, right? Yeah, it has no information. So we have a judgment against the CFO, and we haven't been able to execute because we can't find him. So I think the trial court went a little bit too far in asking for the best possible information. We gave the court the best information we had. There was nothing in terms of substantive evidence to rebut that information. And that information, that evidence we presented is as follows. We have a corporate officer. We have the CEO and the CFO who personally hand checks to Mr. Tenzer, who acknowledges receiving these checks in this physical transaction. He acknowledges that he received these checks for services related to the debtor. Why would any third party pay Mr. Tenzer for services related to the debtor? And those checks come from accounts at a bank at which it is stipulated debtor had accounts. So I think that based on the case law, the state case law that says possession and control of property constitutes an evidentiary basis for finding that that party has an interest in the property, I think that's where the evidence goes. There is no other plausible interpretation of that evidence. Again, I would urge this court to call upon counsel for Mr. Tenzer to say what evidence do you have that that evidence, that that information, that that property was not debtor's property? So if I put your argument in a nutshell, basically what I'm saying is the trustee established a prima facie case of a preferential transfer under California law and the burden then shifted to the debtor to come forward with that. Under federal law. Or federal law, excuse me. Yes. And at that point, the debtor had to rebut. And there is no evidence from the debtor, except from Mr. Tenzer. Wasn't there also a problem? I mean, if we just assume for a moment that the money was the debtor, isn't there also a question as to whether or not value was received? That goes to the second issue, Your Honor. Yeah. The second order. Uh-huh. The fraudulent conveyance fund. I was dealing with one at a time. I understand that. I just want to – Do you want me to shut it off? Well, I want you at some point, because your time is – you've used 10 minutes. I can do it now. On the second issue, Your Honor, we have a default judgment entered against heartbeat of the nation. Heartbeat of the nation was not represented. Counsel submitted a declaration saying, oh, by the way, to start off with, there is no dispute that the property transfer was debtor's. That's – there's just no dispute on that. So we submit that under California law, once we establish that debtor was insolvent at the time of the transfer, which was established evidentiary, then the burden is on heartbeat of the nation to show that there was reasonable consideration. Well, there's nobody there to rebut. So we submit that, again, this is a default judgment situation. So to the extent that insolvency exists, to the extent that the property is property of the estate under Myers v. IRS Commissioner, unless there's a rebuttal of that, then we have no issue. We do have a separate issue under that cause of action. The BAT claims that the estate inadequately pled the cause of action under California law. There's no question that the pretrial order and the complaint – the pretrial order generally says that the fraudulent conveyance of action is being brought under both state and federal law. It clearly says that. And the pretrial order specifically cites the California fraudulent conveyance section. The BAT's problem is that the estate did not cite Section 544, which is an enabling statute, which enables the trustee to use the California statute, which clearly is named in the pretrial order. I think the BAT was really reaching here. Just under the doctrine of no displeasing, there's no question that Mr. Tenzer and the Court knew what we were dealing with. Neither Mr. Tenzer or the Court, heartbeat of the nation, nobody ever raised this issue at the trial level. And we just submit that this was just a way to dispose of this on procedural grounds. We just don't think that it has any merit, unless the Court has questions on it. Thank you. Okay. Thank you. Good morning, Your Honor. Richard Robbins, appearing before the appellee. I first want to address an issue. In reviewing my notes yesterday, I looked at my brief, and I noticed I omitted the first three pages of the table of contents. If the Court wants that, I'll bring it to you. If the Court deems it necessary. I got everything in here, but I'm really embarrassed after looking at it. But the real issue here, I think, is the question of the sufficiency of the findings of facts. And let me argue their side. I think if this was the flip side of this coin, and if the Court had drawn the conclusion on facts in their favor, I wouldn't be here today. Because I'd get walked away from it. I think that the findings of fact that the Court found on either side have been so persuasive that almost the Court of Appeal is bound to go along with it here. I think we've all seen in many cases here that facts much weaker than these have been sustained on appeal. There's no doubt about it, in my mind. But the Court did find here, and I think the Court went into great detail after listening to the testimony and reviewing the evidence, of the fact that they did not trace these funds back to the bank. Now, granted, I feel sorry for the counsel, too, because I see his problem here. He didn't have the evidence. He didn't have the bank number. And as Judge Talman just noted, he didn't have the testimony of the two most important people here, the CEO and CFO. And I made a note in my brief here that they had 25 months in order to get the testimony. Well, where could the money have come from? From Mr. Moten. And the reason why I say that is that he also was personally liable on these contracts. If you look at most of the contracts, the later contracts, after the disputes arose, it was not only the corporation, the debtor corporation here, but Mr. Moten individually was also liable on it. And he had a good motive, too, a very good motive, because he was financially, he was hung out to dry, too, and he needed my client to help him on these things to get this stuff done or he would really be in trouble. And I think there's a very strong motive on his part to help with this. I think the trial court made a very important finding here on regard to that even though they had income for the year prior to this, there was no evidence that they had cash on hand to pay $100,000 or $120,000. And I think very clearly it did come from Mr. Moten. The most important, I think, compelling information about where the money came from was I think it was on the $100,000 check. It came in an envelope, and the return address on the envelope was Mr. Moten personally here in Los Angeles, his home here, not the New York corporation. So I think that's very compelling at that point in time. And I think the court relied on that a lot, too, to make the finding that the money came from someplace other than the debtor corporation. I've gone at length. One thing I do want to... Can you help me out a little bit? As I understood Mr. Parker's argument, he was essentially saying we got blindsided because, was it your predecessor counsel didn't adequately plead the affirmative defense? Is that what I understand? I disagree with you. I wouldn't accuse him of sandbagging, particularly when I'm playing poker, but I don't think I sandbagged her a bit. Well, I wasn't suggesting that you sandbag him. I think what he said to us earlier was, I didn't realize until it was too late to conduct discovery that this was going to be an issue because of the fact that it wasn't planned. I quite honestly can't respond to that because I don't know what was in his mind. Obviously that's his excuse now, but I do know that in this case when I got involved in it, it was my client long after the first appeal when it was getting down close to when we had to get back to going to trial like that. So I was really hustling trying to find out. The first thing I did, as I sent out a notice of deposition for Mr. Firewalker, who was very instrumental in giving it, and ultimately we opened up stipulations and they said, well, rather take his deposition, give me a summary of what he's going to say and we'll just stipulate to it if we agree to it. And that's what we did do. I don't know what they were doing. I really, I just can't respond to that. We got sandbagged. It was their fault. It was their fault, not our fault. And I wouldn't try and sandbag him anyways. I didn't. Well, I'll modify my term, sandbagged to make it surprised. How's that? That's a euphemism. But other than that, I've said everything out in our brief. The one thing I did want to mention is Mr. Obergon. It was Ms. Parker that didn't show up today. But they mentioned about the bankruptcy appellate panel when they reviewed this, and I think that very distinctly on page 18 of their memorandum of opinion, they've mentioned not the word preponderance of the fundament standard, but they state, and I quote this, that while the inferences sought by Ehrenberg may have been justified if drawn, I think that is the preponderance of the evidence type language right there. And that's where they did look at it. I think the bankruptcy appellate panel, they looked at it from the right standard. They gave the due deference to finance the fact it should be given. I think the trial court went down very adequately, set forth the reasons why the trial court also found the way they did. And, again, as I say, if the trial court found the other way, I think that would have been the preponderance of the evidence. I couldn't argue with that. So if you have no further questions, I'll submit. Thank you very much. Thank you. Very briefly, counsel makes the contention that Mr. Tenzer was also liable on these debts. Let's make it clear. Their testimony is that, excuse me, Mr. Moulton had personal liabilities on these debts, on these contracts. Let's make it clear that the funds transferred by Mr. Tenzer's testimony were for current services rendered to debtor. They were not on the original contracts. So Moulton had no personal liability on that. So there's no reason to believe that Moulton made those payments for that reason. The second point. Well, would Moulton have had to pay, meet those payrolls? Personally, no. He had no reason to. And that's why it's so compelling to believe that the money came from debtor to pay debtor's debts. Now, Your Honor, let's take Your Honor's inference one step further. Let's assume for the sake of argument that Moulton brought his personal cash in, which many entrepreneurs and sole shareholders do, and put them into a corporation. Then they transfer the funds, and they pay corporate debts. Those funds are typically treated as a loan to the corporation. And when we're in these situations, Your Honor, there's a whole body of case law that deals with something called the ear-marking doctrine. And when somebody such as counsel wants to argue that, look, these funds came from an individual and not from, you know, not from the debtor, it's their burden under these facts, the facts being where the debtor, through its corporate officers, exercises possession and control of those funds. They hand the check to them in a corporate capacity. They purport to argue how those funds are to be allocated. The evidence shows all that. And so I think that if they want to argue that the funds came from Mr. Moulton, they need to take on that burden and follow through with the ear-marking doctrine. Having said that, the record is void. Again, during opening argument, I urge this Court to call upon counsel to show you one iota of evidence that the money came from Moulton. Look at the result. Well, assuming it came from the corporation, if it was used to pay the corporate payroll, why isn't that good value for the payment? Good value isn't it? Right now we're dealing with the preferences or are we dealing with the fraudulent conveyance? Two issues. Well, I'm over on the fraudulent conveyance now, I guess. On the preferences, Your Honor, it's not an issue. Why is it not an issue? It's not an issue because they never pled the contemporaneous exchange affirmative defense. Well, the bankruptcy judge seemed to think it took place. In the context of the fraudulent conveyance. Not in the context of the preference. Well, if you got this remanded, wouldn't there then be another trial as to whether this was for good value? The transfer was for current value? On the preference, no. Because it was an affirmative defense which they failed to plead. On the fraudulent transfer, I guess the court would have to go back and revisit it depending on what this court ruled vis-a-vis the applicable shifting of the burden of proof under Myers versus IRS. You see, if we go with the Myers versus IRS case law, then yes, there would have to be a trial on that issue. And the last comment I would make is that when counsel says that this thing went on for 25 months, let's make it clear that approximately 18th of those 25 months dealt with the initial dismissal. It went up to the Ninth Circuit, came back, and we're only talking about three or four months at the tail end. And that's the point in time at which I wanted to make it clear. Your Honor made a point that I wasn't arguing that they sandbagged us. What I was really saying was that the first attorney didn't dispute that it was a transfer of property of the estate. In terms of the correspondence with counsel. Okay. That's why I modified my term. Yes. Surprise. So you were surprised because of the fact that it had never been an issue. Exactly. And in fact, we were talking settlement up until counsel substituted. But I'm still wondering, even with three or four months after our first appeal, why couldn't you have issued two notices of deposition? Because we couldn't find them. We just could not find these people. One man was dead. Right. Which is why we couldn't. We didn't know that at the time. We didn't know that at the time. But we found out subsequently. And the other one we still can't find. Okay. Could I just ask you on the question of the source of the funds? Moulton did have a bank account in the same bank, didn't he? The cover letter, was there a letter that said? We don't know that. Was there – I'm trying to get – there was a cover letter that said this comes – this is from the – with the cashier's check? Yes. Yes. It was a cashier's check. Prior to counsel, we asked him, you know, what transfers did you receive from Devere? And he sent us a cover letter saying, here, we received this one, here's the check. It wasn't disputed early on. It wasn't disputed early on. But wasn't there argument that they had a contractual obligation, A, for the sale of the business, but, B, also to continue to pay Mr. Tenger for continuing to make infomercials? Yes, Your Honor. But look at the interrogs. Look at the interrogs. And what do they say? We got these funds from Devere. And we got them for current services. So there's never any allegation in their responses to interrogatories that this was for back payment. They basically say, hey, look, it's for – it's for the current services. So – The letter that Tenzer got, I thought, said that this is from – that it's from Moulton's Bank. No. I don't believe that's the case, Your Honor. I thought Moulton maintained this account at the same branch. He did maintain an account at the same branch. But there's no allegation this was for Moulton's account. Devere also maintained a bank. We don't know where – the problem with the record is we don't know where the money came from, right? We don't know where the check came – we don't know what the origin of the funds to purchase the cashier's check was. All we know is that a cashier's check got delivered to Devere. An officer of Devere. And it wasn't Moulton necessarily, by the way. I mean, it was also Mark – I keep forgetting his name – the CFO. Right. It wasn't just Mr. Moulton that made these transfers. It was the company's chief financial officer. What we have is a situation where a corporation's chief financial officer hands checks to somebody who's rendering services for the company for rendering those services. And, you know, at some level, we're sitting here going, my God, the guy rendered services. Why shouldn't he get paid? That's always the big problem. These are preference actions. That's the way the preference laws are written. This is an issue we need to take up with Congress, not with the National Security. Well, okay. It is your burden to show that it was property of the debtor, right? Yes. All right. If there are two bank accounts, and this is a cashier's check, and the person with one bank account is the bankruptcy and one bank account is the person who is responsible for some of the debts of the corporation, can we assume the prior factor said you didn't carry your burden? Isn't that right? Yes. How do we review that? Is that a question of fact? Is that a question of law? It's a question of law. This is the incorrect standard. They say it's a question of fact. That's my question. But it's a question of law. And what is the law that says that the BAP is wrong? I cite it. It's pretty clear. The Ninth Circuit has always employed a — give me a second here. I'll — that case is Henry Keller. Okay. Henry Keller provides that authority. Okay. You've more than used your time. Thank you. The matter just argued is submitted for decision.
judges: Goodwin, Schroeder, Tallman